**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Van Curan, | ) No. CIV 12-347-TUC-LAB |
| | ) |
| Plaintiff, | ) **ORDER** |
| | ) |
| vs. | ) |
| | ) |
| Carolyn W. Colvin, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties.  *See* FED.R.CIV.P. 73; (Docs. 10, 11).

The court finds the final decision of the Commissioner is supported by substantial evidence and is free from legal error.  *See Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).

PROCEDURAL HISTORY

On September 15, 2008, Van Curan constructively filed an application for disability insurance benefits and supplemental security income.  (Tr. 23)  He alleged disability beginning on October 2, 2007, due to "Weak heart/ arthritis and bursitis/ nervous disorder/ depression/ vision problems/ memory problems/ emotional and mental stress."  (Tr. 165)  His claim was

1  denied initially (Tr. 114-121) and upon reconsideration (Tr. 124-130).  Van Curan requested

2  review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) George

3  W. Reyes on May 13, 2010.  (Tr. 23, 35, 131)  In his decision, dated October 22, 2010, the ALJ

4  found Van Curan was not disabled.  (Tr. 23-35)

5  Van Curan appealed and submitted additional exhibits, but the Appeals Council denied

6  review making the decision of the ALJ the final decision of the Commissioner.  (Tr. 1-6, 655);

7  *See Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989). Van Curan subsequently filed

8  this action appealing the Commissioner's final decision.  (Doc. 1); *see* 20 C.F.R. § 422.210(a).

9  He filed his opening brief on November 19, 2012.  (Doc. 18)  He argues the ALJ erred when

10  he failed to properly credit the opinion of the examining source, Nancy Eldredge, Ph.D. *Id*. He

11  further argues the ALJ's decision is not supported by substantial evidence in light of the MRI

12  study he submitted for the first time to the Appeals Council.  *Id*.

13  The Commissioner filed a responsive brief on January 17, 2013.  (Doc. 22) Van Curan

14  filed a reply on February 4, 2013.  (Doc. 23)

15

16  Claimant's Work History and Medical History

17  In the fifteen years prior to his alleged disability onset, Van Curan worked as a plumber's

18  helper and as a heating and cooling technician.  (Tr. 199)  In his application, he alleges that

19  tremors in his hands and arthritis prevent him from continuing to work.  (Tr. 205)

20  On October 2, 2007, his alleged onset date, Van Curan obtained work at Chas Roberts

21  Air Conditioning Inc. (Tr. 201)  He was, however, terminated after only three weeks for

22  inadequate performance.  (Tr. 201)  In July of 2008, Van Curan obtained work installing wood

23  flooring, but he was terminated after only two weeks because he was "too slow."  (Tr. 200)

24

25  Physical Impairments

26  In March of 2005, Van Curan underwent a lumbosacral spine MRI.  (Tr. 376) The exam

27  revealed "moderate-to-severe" desiccation of the L5-S1 intervertebral disk and "moderate to

28  severe loss of disk height."  (Tr. 376)

In January of 2009, Robert Estes, M.D., reviewed the record and completed a Physical Residual Functional Capacity Assessment for the state disability determination service.  (Tr. 298) He concluded Van Curan could lift and/or carry 25 pounds frequently and 50 pounds occasionally.[1]  (Tr. 298)  He could stand and/or walk with normal breaks for 6 hours in an 8-hour day.  (Tr. 299) He could sit with normal breaks for 6 hours in an 8-hour day.  *Id*.  He should only occasionally crawl or climb ladders, rope, or scaffolds. (Tr. 300) He had a slightly diminished range of motion in his right shoulder and limited handling and fingering due to hand tremors.  (Tr. 301) He should avoid concentrated exposure to vibration and hazards such as machinery and heights. (Tr. 302) Estes noted that "claimant can drive, shop, prepare meals but alleges heart weakness, severe exertional limitations, with credibility less than ideal." (Tr. 305)

In April of 2009, Jerry L. Dodson, M.D., reviewed Estes' report for the state disability determination service and affirmed his opinions.  (Tr. 339)

After his application was denied by the ALJ, Van Curan submitted to the Appeals Council an MRI study performed in October of 2010.  In that study, Seth Gibson, M.D., reported "[r]ight L5 nerve root compression with disc disease spanning from the L2-L3 through L5-S1 levels." (Tr. 714)


Mental Impairments

In March of 2005, Van Curan was treated at St. Joseph's Hospital following an "overdose and suicide gesture/attempt." (Tr. 233) Van Curan had been despondent because his wife of four and one-half years asked for a divorce. (Tr. 233-36) At discharge, his diagnoses read as follows: "Axis I:  Rule out bipolar affective disorder.  General anxiety disorder.  Axis II:  None.  Axis III:  Chronic pain with sciatica.  Axis IV:  Severe with his marriage stressors. Axis V:  Global assessment of function [GAF]. . . is 50-55 at the time of discharge." (Tr. 235)

---

[1]  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  20 CFR §§ 404.1567; 416.967(c).

In May of 2005, Van Curan was evaluated by Nancy Eldredge, Ph.D.  (Tr. 242-251) Eldredge administered an extended clinical interview; the Wechsler Adult Intelligence Scale-III; Reitan-Indiana Aphasia Screening Test; Trail Making Test, Parts A and B; Wechsler Memory Scale-III; Booklet Category Test; Conners' Continuous Performance Test-II; Amen ADD; Tactual Performance Test; Manual Finger Tapping Test; Grip Strength Test; Minnesota Multiphasic Personality Inventory-2; and reviewed the medical records.  *Id.*  Her diagnosis reads as follows: "Axis I – 294.9 Cognitive Disorder NOS, primarily affecting speeded visual processing, visual memory, and visual-motor integration; 309.0 Adjustment Disorder, With Depressed Mood; . . . Axis IV – Psychosocial and Environmental Problems: pending divorce, possible loss of home, unemployment, financial insecurity; Axis V – GAF: 50-55."  *Id.*  She opined that Van Curan could feasibly "pursue training in real estate or as a paralegal," but "first and foremost" he should address his depression and develop strategies for coping with stress. (Tr. 249)

In January of 2009, Van Curan was examined by Hunter Yost, M.D., for the state disability determination service.  (Tr. 306) Yost noted that Van Curan "has a long history of depression dating back approximately 30 years."  (Tr. 306)  "[I]n the 1980s he would put a gun to his head several times a year but was unable to pull the trigger."  (Tr. 306) "After the breakup of a marital relationship in 2005 he took an overdose of pills and was admitted to St. Joseph's Psychiatric Hospital for five days."  (Tr. 306) "He is currently taking Citalopram . . . for depression . . . ."  *Id.*   Yost's diagnoses read as follows: "Axis 1:  Major depressive disorder, recurrent with mild features.  Axis II:  No diagnoses.  Axis III:  1.  Elevated cholesterol.  2.  Hypertension.  3.  Chronic neck and back pain.  Axis IV:  Limited social supports.  He structures his own daily activities.  Axis V:  Current GAF of 61 to 70.  (Tr. 308) Yost wrote the following summary: "Mr. Van Curan states that he has not been interested in counseling or therapy for his depression although he has been willing to take medications which have not been of much benefit.  There were no significant cognitive deficits in my opinion. . . ."  (Tr. 308) Yost concluded that Van Curan's condition would impose no limitations lasting for 12 months.  (Tr. 309)

In February of 2009, Alan Goldberg, Psy.D., A.B.P.P., J.D., reviewed the medical record for the state disability determination service and completed a Psychiatric Review Technique form.   (Tr. 311)   He documented affective disorder   (major depressive disorder - mild symptoms). (Tr. 311-320)  Upon analyzing the "B" criteria of mental limitations, he found mild limitation in maintaining social functioning; no limitation in the activities of daily living; no limitation in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 321); *see* 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00.  Goldberg noted that Van Curan has only mild symptoms and opined that his condition is non-severe.  (Tr. 323)

In April of 2009, Van Curan was examined by James Armstrong, Ph.D., for the state disability determination service. (Tr. 340) Armstrong gave the following diagnostic impression: "296.32 Major Depressive Disorder, Recurrent Episode, Moderate to perhaps severe at time[s]. But much improved due to current meds." (Tr. 345)  At the examination, Van Curan remarked, "I'm trying to get work, seems like age discrimination, I have no training to diagnose a circuit board, slow, can't solder" (Tr. 345) Armstrong opined that Van Curan's condition will impose no limitations lasting 12 months.  (Tr. 345)

In May of 2009, Randall J. Garland, Ph.D., reviewed Goldberg's assessment for the state disability determination service and concurred with his opinions.  (Tr. 348)

In May of 2010, Van Curan was evaluated again by Nancy Eldredge, Ph.D.  (Tr. 638-652)   Eldredge offered the following diagnoses: "296.32 – Major Depression, Recurrent, Moderate to Severe; 301.83 – Borderline Personality Disorder; 315.1 – Mathematics Disorder; 294.9 – Cognitive Disorder Primarily Affecting Visuospatial Skills, Visual-Motor Integration, and Perceptual Reasoning."  (Tr. 652) Eldredge completed a Medical Source Assessment (Mental) in which she stated Van Curan has significant psychological limitations in a number of work related areas.  (Tr. 653)  Specifically, she opined that he would be unable to regularly "work in coordination with or proximity to others without being distracted by them," "complete a normal work day and work week without interruptions from psychological based symptoms," "accept instructions and respond appropriately to criticism from supervisors," or "get along with coworkers or peers without distracting them or exhibiting behavioral extremes."  (Tr. 653-54)

She concluded, "In my opinion, because of the complex overlay of emotional, cognitive, and physiological symptoms, Mr. Van Curan would [be] unlikely to be able to maintain employment."   *Id*.

        Third Party Statement

In March of 2009, Van Curan's sister, Norma Mitchel, submitted a Third Party Function Report.  (Tr. 206)  She explained that Van Curan lives alone, prepares his own meals, cares for his pets, and attends to his personal care with no reported problems.  (Tr. 206-08)  He gets out every day by walking or driving his car.  (Tr. 209)  He shops and uses money without problems. (Tr. 209)  She knows he watches television and uses a computer, but she does not know if he engages in social activities.  (Tr. 210)  She estimates Van Curan can lift 30-40 pounds, but he has pain with bending or squatting.  (Tr. 211)   Also, his vision is poor, and his hands shake. (Tr. 211)

        Mitchel reports that Van Curan has poor memory and is forgetful.  (Tr. 211)  He does not get along well with authority figures.  (Tr. 212)  He does not handle stress well, and he has suicidal tendencies.  (Tr. 212)

        The record also contains a letter written in May of 2010, by Van Curan's sister, Barbara-Ann A. Gietl.  (Tr. 216-17)  Gietl lives in the same town as Van Curan and has known him all her life.  *Id*.  Gietl was a nurse for 20 years and worked "in the nursing field for 38 years total." *Id*.

        According to Gietl, Van Curan had trouble in school because "he could not concentrate for long periods of time and had a hard time grasping ideas."  *Id*.  When he was in the Air Force, he was involved in an automobile accident and was in a coma for 1-2 weeks.  Since then, he has walked with a limp and has pain in his leg.   *Id*.

        She explained that Van Curan has always had trouble working for others.  *Id*.  This is because he works slowly and is uncomfortable taking direction.  *Id*.  Van Curan can learn "simple and easy concepts," but he gets frustrated and angry if he is confronted with something complicated.  *Id*.  Whenever he gets in financial difficulties, he always calls his family members

1  for help. *Id*. Because this has happened repeatedly, they are now reluctant to provide this help.
2  *Id*.

3       He has said in the past  "that maybe he should just kill himself and get it over with."
4  *Id*. He has taken pills in the past, but when he does so, he "always calls someone for help in
5  order to make sure he does not die." *Id*.    "This says that he is not suicidal but severely
6  depressed over his situation." *Id*.

7

8       <u>Hearing Testimony</u>

9       On May 13, 2010, Van Curan appeared with counsel at a hearing before ALJ George W.
10  Reyes. (Tr. 75)  At the time of the hearing, Van Curan was 58 years old. (Tr. 34)  He graduated
11  from high school and has an associates degree in accounting.  (Tr. 307)  He has training in
12  tractor trailer operation and heating and air conditioning.  (Tr. 307)

13       Van Curan testified that he cannot work due to hand tremors, back pain, and nystagmus
14  (involuntary eye movement).  (Tr. 73-78)  The hand tremors date to 1972 when he had an
15  automobile accident and was hospitalized for seven weeks. (Tr. 78-79) Van Curan has had the
16  nystagmus since birth, but his eyes have worsened with age. (Tr. 77-78) He has difficulty
17  reading the print in a typical book or magazine. (Tr.95) Even in high school, he had to put a
18  finger or ruler against a line of text to read it.  (Tr. 95)

19       Van Curan gets frustrated easily and does not handle stress well.  (Tr. 79) After two
20  weeks working for Wal-Mart, he quit when he became frustrated and overwhelmed with the
21  pace of work. (Tr. 79-80)  He has always had problems with criticism.  (Tr. 95) He was teased
22  as a child because of his eyes and his lisp.  (Tr. 95-96)

23       Van Curan also suffers from depression. (Tr. 80) He testified that he "almost committed
24  suicide several times in the backyard." (Tr. 80) He was hospitalized approximately six months
25  ago when he took an overdose of medication.  *Id*.  He left a note on his desk for his wife who
26  called an ambulance.  *Id*.  He is depressed because he brought his second wife and her children
27  here from the Philippines, and now she wants to divorce him and marry someone rich. (Tr. 82)
28  He was prescribed psychiatric medication, but he would sometimes forget to take it.  (Tr. 85)

1  Then, he stopped taking it altogether because he believed taking it sporadically would not be
2  of any benefit.  (Tr. 85)

3      Van Curan testified that he could walk a quarter mile before pain or fatigue would force
4  him to stop.  (Tr. 83) He could stand for five minutes and sit for 10 or 15 minutes.  (Tr. 83)  He
5  maintained that he could lift and carry 50 pounds with his left arm and 50 pounds with his right
6  arm.  (Tr. 83-84)  His hips and legs are worse than they were in October of 2007.  (Tr. 86)  The
7  rest of his impairments are the same.  (Tr. 86-87)

8      Because of his hand tremors, he cannot print neatly.  (Tr. 94)  He needs to use both hands
9  to spread ketchup on his meat.  (Tr. 94)  He was prescribed propranolol for his "benign tremor,"
10  but he doesn't take it because he is forgetful.  (Tr. 95)

11     The ALJ took testimony from vocational expert Traci Schonbrun.  (Tr. 98) Schonbrun
12  testified that a person who could perform medium work,[2] but was limited in his ability to read
13  small print or write or type and could not work in a "fast-paced production environment," could
14  not perform any of Van Curan's past relevant work.  (Tr. 99-102)   Such a person could,
15  however, work as a dishwasher, janitor, or laundry attendant.  (Tr. 99-102)

16     A person who could not cope with work stress 20 percent of the time could not maintain
17  employment.  (Tr. 105)  Similarly, a person who could not stay on task and needed to be
18  checked by a supervisor every hour could not work.  (Tr. 107)

19     After the hearing, Van Curan wrote a letter to his counsel explaining that the
20  refrigeration canisters that he can carry weigh only 35 pounds, not 50 pounds as he thought.
21  (Tr. 218)

22     In his decision, dated October 22, 2010, the ALJ found Van Curan was not disabled
23  relying on the testimony of the vocational expert.  (Tr. 34-35)

24

25     CLAIM EVALUATION

26

27  _____

28     [2]  Medium work involves lifting no more than 50 pounds at a time with frequent lifting
    or carrying of objects weighing up to 25 pounds.  20 CFR §§ 404.1567; 416.967(c)

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim is denied. *Id*.

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[3] to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform

---

[3] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

1   other substantial gainful work in the national economy in view of claimant's age, education, and

2   work experience.  20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

3       In determining whether the claimant retains the ability to perform other work, the ALJ

4   may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA.  *See* 20

5   C.F.R. Pt. 404, Subpt. P, App.2;  *Desrosiers v. Secretary of Health and Human Services,* 846

6   F.2d 573, 576-577 (9th Cir. 1988).   The grids categorize jobs according to their exertional

7   requirements such as sedentary work, light work, or medium work.  *Tackett v. Apfel*, 180 F.3d

8   1094, 1101 (9th Cir. 1999).  The grids calculate whether or not the claimant is disabled based

9   on the claimant's exertional ability, age, education, and work experience.  *Id.*  The grids are a

10  valid basis for denying claims where they completely and accurately describe the claimant's

11  abilities and limitations.  *Id.* at 1101-02.  If the claimant has only exertional limitations, the

12  claim may be resolved based only on the grids.  *Lounsbury v. Barnhart*, 468 F.3d 1111, 1115

13  (9th Cir. 2006).

14      If the claimant has significant non-exertional limitations, the grids do not apply.  *Penny*

15  *v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993).  "Non-exertional limitations are limitations that

16  do not directly affect a claimant's strength."  *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.

17  1988).  Mental limitations, for example, are non-exertional.  *Id.* at 1340-41.  If significant non-

18  exertional limitations prevent the claimant from performing the full range of work in any

19  exertional category, the ALJ must take the testimony of a vocational expert to deny the claim.

20  *Id.* at 1341.

21      If the claimant has both exertional and non-exertional limitations, the ALJ must consult

22  the grids first before considering the testimony of a vocational expert at step five.  *Lounsbury*

23  *v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006).  If the grids direct a finding of disability, that

24  finding must be adopted by the Commissioner.  *Lounsbury,* 468 F.3d at 1116.

25

26      The ALJ's Findings

27      At step one of the disability analysis, the ALJ found Van Curan "has not engaged in

28  substantial gainful activity since October 2, 2007, the  alleged onset date . . . ."  (Tr. 25).  At

- 10 -

step two, he found Van Curan "has the following severe impairments: disorder of the nervous system causing hand tremors; nystagmus; and disorder of the back (degenerative disc disorder) . . ." (Tr. 25)  At step three, the ALJ found Van Curan's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404.  (Tr. 26)

The ALJ then analyzed Van Curan's residual functional capacity (RFC).  He found Van Curan "has the residual functional capacity to perform medium work . . . with the following exceptions: he cannot use ladders, ropes, or scaffolds; cannot read small print; is limited to little or no handwriting or key boarding; must avoid concentrated exposure to vibrations or hazards . . .; is limited to tasks that are not performed in a fast-paced production environment; [and] works with things rather than people. . . ." (Tr. 27)  He retains the ability to "respond to changes in a routine work setting."  (Tr. 27)

At step four, the ALJ found Van Curan was unable to perform any past relevant work. (Tr. 34)  At step five, the ALJ found Van Curan could work as a dishwasher, janitor, or laundry/linen room attendant and therefore was not disabled.  (Tr. 34-35)

STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993).

The findings of the Commissioner are meant to be conclusive.  42 U.S.C. §§ 405(g), 1383(c)(3).  The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

1    Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept

2    as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a

3    preponderance." *Id.*

4          "Where evidence is susceptible to more than one rational interpretation, the ALJ's

5    decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider

6    the entire record as a whole and may not affirm simply by isolating a specific quantum of

7    supporting evidence." *Id.*

8          In evaluating evidence to determine whether a claimant is disabled, the opinion of a

9    treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir.

10   1993). The Commissioner may reject a treating physician's uncontradicted opinion only if he

11   sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

12   1995). If the treating physician's opinion is contradicted by another doctor, the Commissioner

13   may reject that opinion only if he provides specific and legitimate reasons supported by

14   substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between

15   a medical opinion as to a physical condition and a medical opinion on the ultimate issue of

16   disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

17         "The opinion of an examining physician is, in turn, entitled to greater weight than the

18   opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

19   "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the

20   uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor,

21   even if contradicted by another doctor, can only be rejected for specific and legitimate reasons

22   that are supported by substantial evidence in the record." *Id*. at 830-31.

23         "Where medical reports are inconclusive, questions of credibility and resolution of

24   conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d

25   747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is

26   less than credible, however, must have some support in the record. *See Light v. Social Security*

27   *Administration,* 119 F.3d 789 (9th Cir. 1997).

28

1   The ALJ need not accept the claimant's subjective testimony of disability, but if he

2   decides to reject it, "[]he must provide specific, cogent reasons for the disbelief." *Lester,* 81

3   F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the

4   Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

5   *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not

6   credible and what evidence undermines the claimant's complaints." *Id.*

7

8   DISCUSSION

9   Van Curan argues first that the ALJ committed legal error when he improperly

10   discounted the opinion of the examining physician[4], Nancy Eldredge, Ph.D. *See Orn v. Astrue*,

11   495 F.3d 625, 631 (9th Cir. 2007).

12   "To reject the uncontradicted opinion of a treating or examining doctor, an ALJ must

13   state clear and convincing reasons that are supported by substantial evidence." *Ryan v.*

14   *Commissioner of Social Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "If a treating or examining

15   doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

16   providing specific and legitimate reasons that are supported by substantial evidence." *Id.*

17   In May of 2010, Van Curan was evaluated by Nancy Eldredge, Ph.D. (Tr. 638-652)

18   Eldredge found Van Curan had significant psychological limitations in a number of work-

19   related areas. (Tr. 653) She concluded that Van Curan was disabled because of his "complex

20   overlay of emotional, cognitive, and physiological symptoms." (Tr. 652)

21   Eldredge's opinion of disability, however, was contradicted by the state agency

22   consultative physicians, Hunter Yost, M.D., and James Armstrong, Ph.D. Both Yost and

23   Armstrong believed that Van Curan suffered a psychological impairment, Major Depressive

24   Disorder. Both, however, believed this disorder was not significantly limiting. The ALJ in this

25   case adopted the opinions of Yost and Armstrong and rejected Eldredge's opinion of disability.

26   _____

27   [4] "[T]he term "physician" or "doctor" includes psychologists and other health
professionals who do not have M.D.'s." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

28

1  He found that Van Curan's mental impairment is mild and does not directly limit his ability to
2  work.

3      Because Eldredge's opinion of disability was contradicted by two other examining
4  physicians, the ALJ was permitted to reject her opinion only after providing specific and
5  legitimate reasons for doing so.

6      The ALJ gave four reasons for discounting Eldredge's opinion:  First, there is no
7  evidence that Eldredge is a treating source and therefore her opinion is not entitled to the
8  deference the rules give to treating sources.  (Tr. 33)  Second, the examination was conducted
9  only one day after the hearing.  (Tr. 33)  Third, "the report presupposes that the claimant is
10  telling the truth," and Van Curan's credibility is questionable.  (Tr. 33)  Fourth, "the report does
11  not address the issue of medication non-compliance."  *Id*.  Van Curan argues that the ALJ's
12  reasons are legally insufficient.  The court does not agree and finds, to the contrary, that the ALJ
13  did provide specific and legitimate reasons for discounting Eldredge's opinion.

14      The court does agree that first two reasons given by the ALJ do not add anything to the
15  "specific and legitimate" analysis.  The ALJ's observation that Eldredge is not a treating source
16  is necessary for determining which test must be applied, but it does not help with the analysis
17  itself.

18      The second reason also adds little to the analysis.  Although the ALJ characterized the
19  timing of Eldredge's report as "unexpected[]", coming just one day after the hearing,  there is
20  nothing in the record to support the ALJ's apparent concern.  In fact, Van Curan's counsel
21  informed the ALJ of the timing of the examination by motion approximately two weeks prior
22  to the hearing.  (Tr. 135) At the hearing itself, the ALJ discussed the motion with counsel and
23  acknowledged that this study was to be forthcoming.  (Tr. 108)  Accordingly, there was nothing
24  suspicious or surprising about the timing of Eldredge's report.

25      The third and fourth reasons, however, do constitute specific and legitimate reasons for
26  discounting Eldredge's opinion of disability.

27
28

1   Eldredge's opinions are based at least in part on Van Curan's subjective representation

2   of his symptoms.   The ALJ, however, considered Van Curan's credibility to be questionable,

3   and substantial evidence supports his finding.

4   The ALJ may consider at least the following factors when weighing the claimant's

5   credibility: "claimant's reputation for truthfulness, inconsistencies either in claimant's testimony

6   or between [his] testimony and [his] conduct, claimant's daily activities, [his] work record, and

7   testimony from physicians and third parties concerning the nature, severity, and effect of the

8   symptoms of which claimant complains." *Thomas v. Barnhart*, 278 F.3d 947, 958 -959 (9th Cir.

9   2002).  "If the ALJ's credibility finding is supported by substantial evidence in the record, we

10  may not engage in second-guessing." *Id*.

11  As the ALJ noted, the record in this case provides reasons to question Van Curan's

12  credibility.  First, Van Curan's record of daily activities indicates his limitations may not be as

13  severe as he alleges them to be.  (Tr. 32)  Van Curan reports that he is able to drive his car and

14  perform certain odd jobs.  *Id*.  He lives alone and takes care of his personal needs and finances.

15  *Id*.  Van Curan's record of self-reliance and independence is inconsistent with his claim of

16  disabling pain and depression. Household activities are generally not performed with the

17  persistence and pace required in the workplace, but they may be considered by the ALJ in

18  evaluating a claimant's credibility. *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d,

19  595, 600 (9th Cir. 1999).

20  There are further discrepancies in the medical record that cast doubt on Van Curan's

21  credibility. For example, Van Curan received unemployment compensation during the same

22  period that he claims he was disabled.  (Tr. 33)  In Arizona, "unemployment law requires a

23  claimant to hold himself out as available for full-time work to receive unemployment

24  insurance." *Lucey v. Astrue*,  2012 WL 3094958, 5 (D.Ariz. 2012)  Accordingly, Van Curan's

25  unemployment benefits, while not dispositive, may be considered by the ALJ in making his

26  credibility findings.  *See Carmickle v. Commissioner,  Social Sec. Admin.*, 533 F.3d 1155 (9th

27  Cir. 2008); *Lucey v. Astrue*,  2012 WL 3094958, 5 (D.Ariz. 2012).

28

Van Curan argues to the contrary that his unemployment compensation does not contradict his subjective testimony of disability. He suggests that benefits would be consistent with an ability to perform sedentary or light work. They therefore should not be taken as proof that he can perform medium work, which was a necessary predicate to the ALJ's finding of non-disability at step five.

While Van Curan's argument is correct as it applies to his *physical* limitations, he is wrong to conclude that unemployment benefits have no bearing on his credibility. If he has the ability to work, even at a sedentary or light level, then his *psychological* limitations must not be disabling. Accordingly, his unemployment compensation contradicts his subjective testimony of disabling psychological impairments and supports the ALJ's adverse credibility finding.

The ALJ also noted that the medical record does not entirely support Van Curan's claim that he suffers from suicidal depression. The record indicates that Van Curan was treated at St. Joseph's Hospital following an overdose and "suicide gesture/attempt" in March of 2005. (Tr. 233) On May 4, 2009, however, Van Curan reported that he would never take his own life because he was too afraid to do so. (Tr. 622) Moreover, his sister stated that whenever he takes too many pills, he always makes sure to tell someone so that he can get prompt medical attention. (Tr. 216-17) These inconsistencies cast doubt on Van Curan's claim that he suffers from suicidal depression.

Finally, the ALJ noted that the medical record contains references to Van Curan's non-compliance with medical treatment. (Tr. 31) For example, Van Curan told Yost that he was given medication to treat his depression. (Tr. 306) He said he "took it briefly, but he did not get it refilled." (Tr. 28, 306)

At the hearing, the ALJ asked Van Curan about treatment notes from January of 2009. (Tr. 85) He asked, "It says that at one point you were attending some sort of an encounter group and you quit going to that group and you also quit taking your medication for any mentally related problem. Does that ring a bell?" (Tr. 85) Van Curan expressed no surprise explaining that he probably stopped taking his medication "right away" because he would often forget to

1   take it, and he felt that taking it sporadically would not be of any benefit.  (Tr. 85)  This failure

2   to take prescription medication and failure to comply with treatment is another factor that

3   adversely affects Van Curan's credibility.  (Tr. 85); *see Molina v. Astrue*, 674 F.3d 1104, 1113

4   (9th Cir. 2012) ("We have long held that, in assessing a claimant's credibility, the ALJ may

5   properly rely on unexplained or inadequately explained failure to seek treatment or to follow

6   a prescribed course of treatment.") (punctuation modified).

7       The ALJ in this case gave legally sufficient reasons for discounting the opinion of the

8   examining physician, Nancy Eldredge, Ph.D.   *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir.

9   2007).

10      Van Curan further argues the ALJ's decision is not supported by substantial evidence

11  based on the additional exhibits he submitted to the Appeals Council.  *See, e.g., Brewes v.*

12  *Commissioner of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals

13  Council considers new evidence in deciding whether to review a decision of the ALJ, that

14  evidence becomes part of the administrative record, which the district court must consider when

15  reviewing the Commissioner's final decision for substantial evidence.").

16      Van Curan submitted for the first time to the Appeals Council an MRI study performed

17  in October of 2010.  In that report, Seth Gibson, M.D., found "[r]ight L5 nerve root compression

18  with disc disease spanning from the L2-L3 through L5-S1 levels."  (Tr. 714-15)

19      Van Curan argues this MRI study is important because it is a "key objective fact

20  corroborating Van Curan's statements about his ability to walk . . . and stand . . . ."  (Doc. 18,

21  p. 16)  Had he been provided with this objective evidence, Van Curan reasons, the ALJ would

22  not have been able to discount his subjective testimony of disabling pain.  *Id.*  The court does

23  not agree.

24      The ALJ did not discount Van Curan's subjective testimony of disabling back pain

25  because he lacked objective evidence of a back disorder.  Indeed, the ALJ explicitly found that

26  Van Curan suffers from "disorder of the back (degenerative disc disorder)."  (Tr. 25) The ALJ

27  discounted Van Curan's subjective testimony of disabling back pain because Van Curan did not

28  complain of back pain to his physicians and because he doesn't take his medication.  (Tr. 30-31)

1   Consequently, there is no indication that this new MRI scan would have had any effect on the

2   ALJ's analysis of Van Curan's physical limitations.

3

4        IT IS ORDERED that the Commissioner's final decision in this matter is AFFIRMED.

5   The Clerk of the Court is instructed to enter judgment accordingly and close this case.

6

7        DATED this 17th day of July, 2013.

8

9

10                                                Leslie A. Bowman
                                                  _____
                                                  Leslie A. Bowman
11                                                United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28